Ezra Sutton, Esq. (ES-2189)
900 Route 9 North
Woodbridge, New Jersey 07095
(732) 634-3520
*Attorneys for Sakar International, Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAKAR INTERNATIONAL, INC., :<br><br>Plaintiff, :<br>          Case No.<br>vs. :<br><br>CISCO SYSTEMS, INC., a<br>California Corporation and CISCO :<br>TECHNOLOGY, INC., a<br>California Corporation<br>          :<br>Defendants. : | |

### SAKAR'S COMPLAINT FOR DECLARATORY
### JUDGMENT AGAINST CISCO

The plaintiff, Sakar International, Inc., ("Sakar" or "Plaintiff") hereby files a Declaratory Judgment action against defendants Cisco Systems, Inc. and Cisco Technology, Inc. (hereinafter "Cisco") and by way of its attorneys alleges and states as follows:

### THE PARTIES

1.     Sakar ("Sakar") is a corporation duly organized and existing under the laws of the state of New York, and maintains its principal place of business at 195 Carter Drive, Edison, New Jersey 08817.

2. Upon information and belief, Cisco Systems, Inc. ("Cisco") is a California Corporation duly organized and existing under the laws of the state of California, and maintains its principal place of business at 170 W. Tasman Dr., San Jose, California 95134.

3. Upon information and belief, Cisco Technology, Inc. ("Cisco") is a California Corporation duly organized and existing under the laws of the state of California, and maintains its principal place of business at 170 W. Tasman Dr., San Jose, California 95134.

4. Cisco Systems, Inc. and Cisco Technology, Inc. are collectively hereinafter referred to as "Cisco."

## JURISDICTION AND VENUE

5. These claims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, the United States Patent Laws, 35 U.S.C. § 101 et seq., the Lanham Act, 15 U.S.C. § 1125.

6. This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1332, 1338, 1367, and 2201 and 15 U.S.C. § 1121.

7. Venue for these claims is proper in this judicial district pursuant to 28 U.S.C. §1391 by virtue of Cisco's repeated threats of infringement against Sakar.

8. In addition, in actions concerning patent infringement, venue is proper in the forum where the locus of the operative facts occurred. The locus of the operative facts is in the forum where the design and development of the allegedly infringing product(s) took place and where the designers and developers of the product(s) live and work.

9. In this case, venue is proper in this judicial district because all of the operative facts took place in New Jersey: the allegedly infringing Vivitar camcorder products were developed in New Jersey, all distribution of Sakar's allegedly infringing Vivitar camcorder products took place in New Jersey, all of Sakar's witnesses reside in New Jersey and/or New York, and all of Sakar's documents, including its sales and product records, are located in New Jersey.

## BACKGROUND FACTS

10. Cisco has asserted that it is the owner and, upon information and belief, is the owner of U.S. Design Patent Nos. D591,321 (hereinafter "the `321 design patent") and D610,600 (hereinafter "the `600 design patent").

11. Cisco has asserted that it is the owner and, upon information and belief, is the owner of the federally registered trademarks: FLIP VIDEO (Reg. No. 3,789,499) for camcorders; FLIP FOR GOOD (Reg. No. 3,800,900) for camcorders; FLIP ULTRA (Reg. No. 3,746,270) for camcorders; and FLIP MINO (Reg. No. 3,715,260) for camcorders. Cisco has also asserted that it is the owner and, upon information and belief, is the owner of the following federally unregistered trademarks: FLIP (Serial No. 77/910,849) for camcorders; and DO YOU FLIP (Serial No. 77/840,665) for camcorders. Cisco's alleged registered and unregistered trademarks are collectively hereinafter referred to as the "FLIP trademarks."

12. Cisco has asserted that it is the owner of trade dress rights to a federally unregistered "band design" on the front of its digital camera (hereinafter "Cisco's alleged band design") and that it has promoted and offered for sale cameras bearing this alleged band design at least as early as 2007.

13. By virtue of at least the allegations in certain letters sent to Sakar by Cisco's legal counsel, an actual and justiciable controversy exists between Sakar and Cisco with regard to the alleged infringement, validity, and enforceability of Cisco's `321 and `600 design patents, Cisco's FLIP trademarks, and Cisco's trade dress rights to its alleged band design.

14. On July 26, 2010, Cisco sent a letter to Sakar threatening that the promotion and sale of Sakar's Vivitar camcorder products infringe Cisco's design patents, trademarks, and trade dress rights (see Exhibit A attached).

15. On August 12, 2010, Cisco sent another letter to Sakar threatening that the promotion and sale of Sakar's Vivitar camcorder products infringe Cisco's design patents, trademarks, and trade dress rights (see Exhibit B attached).

16. On information and belief, in light of the clear accusations in Cisco's letters, Sakar has a reasonable apprehension of being sued by Cisco for alleged patent infringement, and trademark and trade dress infringement.

17. Cisco's allegations that Sakar's Vivitar camcorder products, have violated Cisco's patent, trademark, and trade dress rights are seriously and irreparably injuring and adversely affecting Sakar. Unless this Court declares Sakar's rights in this case of actual controversy, Cisco's allegations will continue to injure and adversely affect Sakar. Sakar has no adequate remedy at law.

18. On the basis of the foregoing threats of infringement by Cisco, a justiciable controversy exists, and this Court has personal jurisdiction over Cisco and these claims.

## COUNT I
**(Declaratory Judgment – Non-infringement of U.S. Design Patent No. D591,321)**

19. Sakar repeats the allegations in paragraphs 1-18 of this Complaint as if fully set forth herein.

20. Cisco alleges that it is the owner of U.S. Patent No. D591,321, entitled "Digital Video Camera with Built-In Connector," granted on April 28, 2009 (hereinafter "the `321 design patent").

21. The `321 design patent lists the following individuals as inventors: Nasahn Adam Sheppard, Maarten Dinger, Allan Freas Velzy, Peter Michaelian, Jaewon Samuel Kang, Lionel Jingles, John Louis Warpakowski Furlan, and Greg Allen Cummings.

22. The `321 design patent issued on April 28, 2009 and lists Pure Digital Technologies, Inc. as the original owner. Subsequent to issuance, the `321 design patent was assigned to Cisco Technology, Inc.

23. Cisco has threatened Sakar with patent infringement of the `321 design patent. Accordingly, there exists a substantial and continuing justiciable controversy between the parties as to the infringement, validity, and enforceability of the `321 design patent.

24. Sakar has not infringed the `321 design patent, because the claim of the `321 design patent does not cover Sakar's accused camera. Sakar requests that the Court declare that the `321 design patent has not been infringed by Sakar or Sakar's Vivitar camcorder products.

25.   The design of Sakar's accused Vivitar camcorder is substantially different than the claimed design of Cisco's `321 design patent from the standpoint of an ordinary observer for at least the following reasons:

25(a) **(FRONT VIEW)** the lens in Figure 1 of the `321 design patent appears to be off center and biased toward the left side of the camera, whereas the lens on the Vivitar camcorder is centered and equidistant from either side edge of the camera;

25(b) **(FRONT VIEW)** the perforations or holes in Figure 1 of the `321 design patent are shown to be to the right of the lens and grouped in a rectangular pattern; whereas, the perforations or holes featured on Vivitar camcorder are grouped in a circular pattern;

25(c) **(FRONT VIEW)** the band on the right of the camera lens depicted in Figure 1 of the `321 design patent is longer than the band on the right of the camera lens featured on the Vivitar camcorder.

25(d) **(BACK VIEW)** the keypad on the back of the Cisco video camera featured in Figure 2 shows three circular buttons in a "V" shaped orientation, whereas the Vivitar video camera has two square shaped buttons at either side edge of the camera with rounded edges where one button is labeled with "M" and the other is labeled with "SET" and a central circular shaped button labeled with a "camera icon," wherein the three buttons are extensively linear

instead of in a "V" shaped orientation;

25(e) **(BACK VIEW)** the keypad on the back of the Cisco video camera featured in Figure 2 shows a lower central circular bottom button that forms the bottom portion of the three "V" shaped oriented buttons. This central circular button is surrounded by four labeled coordinates, a top "+" sign, a bottom "-" sign, a right arrow " >" sign, and a left arrow " <" sign. However, the central circular shaped button labeled with a "camera icon" featured on the Vivitar video camera is surrounded by a cruciform button with directional arrows " <" at the top, bottom, left, and right ends of the cruciform.

25(f) **(BACK VIEW)** the keypad on the Vivitar camcorder is surrounded by a raised rectangular border; however, the keypad shown in Figure 2 of the `321 design patent has no surrounding raised border;

25(g) **(BACK VIEW)** the display screen shown in Figure 2 of the `321 design patent has what appears to be perforations or holes on each side of the display screen that are shaped in a rectangular pattern; however, the display screen shown on the Vivitar camcorder does not have speaker holes on each side of the display screen; rather, it has a hinged connector on the left side of the screen;

25(h) **(FRONT VIEW SHOWING USB)** the extended USB connector in Figure 3 of the `321 design patent has an elongated rectangular base; however, the base of the extended USB connector on the Vivitar camcorder is much shorter than the elongated rectangular base of the USB connector shown in Figure 3 of the `321 design patent; and

25(i) **(FRONT VIEW SHOWING USB)** Figure 3 of the `321 design patent also depicts what appears to be a rounded triangular shaped switch or button to the right of the USB connector; however, the Vivitar camcorder does not have any such button.

26. On information and belief, Cisco's `321 design patent is invalid under 35 U.S.C. §102 for anticipation and/or 35 U.S.C. §103 for obviousness in view of certain prior art references, including, but not limited to: the POINT AND SHOOT device (Exhibit C), the CVS disposable camera (Exhibit D), and/or U.S. Design Patent No. D527,403 (Exhibit E).

27. On information and belief, Cisco's `321 design patent is unenforceable because the named inventors of the `321 design patent, namely: Nasahn Adam Sheppard, Maarten Dinger, Allan Freas Velzy, Peter Michaelian, Jaewon Samuel, Lionel Jingles, John Louis Warpakowski Furlan, and Greg Allen Cummings (collectively hereinafter the "named inventors"); and/or the original assignee of the `321 design patent, Pure Digital Technologies, Inc., withheld material prior art references from the U.S. Patent Office.

28. A patent may be rendered unenforceable for inequitable conduct if an applicant, with intent to mislead or deceive the examiner, fails to disclose material information or submits materially false information to the PTO during prosecution.

29. Under 37 C.F.R 1.56, those involved in the prosecution of a patent have a duty to disclose information that is material to patentability. Information is material when a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent. Rule 56 provides that an applicant has a duty to disclose information that is material to patentability and states that:

> (b) Under this section, information is material to patentability when it is not cumulative to information already of record or being made of record in the application, and
>     (1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or
>     (2) It refutes, or is inconsistent with, a position the applicant takes in:
>     (i) Opposing an argument of unpatentability relied on by the [PTO], or
>     (ii) Asserting an argument of patentability.

*See* 37 C.F.R 1.56.

30. In addition, the PTO rules clearly require the submission of known information that contradicts material information already submitted to the PTO. Further, if a misstatement or omission is material under the Rule 56 standard, it is material for the purposes of inequitable conduct.

31. A high degree of materiality, coupled with evidence that the applicant should have known of that materiality, creates a strong inference of an intent to deceive.

32. The USPTO docket for the '321 design patent (Exhibit F), shows that no Information Disclosure Statement ("IDS") or other prior art disclosure was ever filed during the prosecution of that application.

33. However, after the '321 Patent issued on April 29, 2009, the named inventors and/or Pure Digital Technologies, Inc. filed (on May 8, 2009) an IDS in the subsequently filed '600 design patent prosecution (Exhibit G, the USPTO docket list, and Exhibit H, the IDS). This IDS included several press releases disclosing some information about the POINT AND SHOOT camera, including, apparently, the May 1, 2007 press release calling it the "Flip" camera.

34. On information and belief, the named inventors and/or Pure Digital Technologies, Inc. did not suddenly learn about this prior art after the '321 design patent issued. Rather, they knew all along about these prior art cameras and that they were material prior art. In fact, the POINT and SHOOT camera was *so material* that the Patent Examiner for the later '600 design patent application rejected it on the basis that it was anticipated by the May 2007 press release. (Exhibit I).

35. On information and belief, the named inventors and/or Pure Digital Technologies, Inc. failed to cite several press releases disclosing information about the POINT AND SHOOT camera, including the May 1, 2007 press release calling it the "Flip" camera.

36. As a result, during the prosecution of the '321 design patent the USPTO failed to consider this material prior art.

37. This was an intentional breach of the named inventors' and/or Pure Digital Technologies, Inc.'s duty of candor, and was done in bad faith with an intent to deceive the USPTO.

38. On information and belief, the named inventors' and/or Pure Digital Technologies, Inc.'s intentional breach of their duty of candor was inequitable conduct before the USPTO that renders the `321 design patent unenforceable.

39. Sakar has suffered and will continue to suffer damages as a result of Cisco's wrongful allegations of design patent infringement.

40. Sakar requests that the Court declare that Cisco's `321 design patent is not infringed by Sakar's Vivitar camcorder products, is invalid, and/or unenforceable.

41. Sakar is entitled to an injunction under 15 U.S.C. § 1116, *et seq.* enjoining Cisco's wrongful conduct and false assertions of patent infringement, and to pay monetary damages.

## COUNT II
**(Declaratory Judgment – Non-infringement of U.S. Design Patent No. D610,600)**

42. Sakar repeats the allegations in paragraphs 1-41 of this Complaint as if fully set forth herein.

43. Cisco alleges that it is the owner of U.S. Patent No. D610,600, entitled "Digital Video Camera with Built-In Connector," granted on February 23, 2010 (hereinafter "the `600 design patent").

44. The `600 design patent lists the following individuals as inventors: Nasahn Adam Sheppard, Maarten Dinger, Allan Freas Velzy, Peter Michaelian, Jaewon Samuel Kang, Lionel Jingles, John Louis Warpakowski Furlan, and Greg Allen Cummings.

45. The `600 patent issued on February 23, 2010 and originally assigned to Pure Digital Technologies, Inc. The `600 design patent was later assigned to Cisco Technology, Inc.

46. Cisco has threatened Sakar with patent infringement of the `600 design patent. Accordingly, there exists a substantial and continuing justiciable controversy between the parties as to the infringement and validity of the `600 design patent.

47. Sakar has not infringed the `600 design patent, because the claim of the `600 design patent does not cover Sakar's Vivitar camcorders. Sakar requests that the Court declare that the `600 design patent has not been infringed by Sakar or Sakar's camcorder products.

48. The design of Sakar's accused Vivitar camcorder is substantially different than the claimed design of Cisco's `600 design patent from the standpoint of an ordinary observer for at least the following reasons:

> 48(a) **(FRONT VIEW SHOWING USB PLUG)** The extended USB connector in Figure 3 of the `600 design patent has an elongated rectangular base; however, the base of the extended USB connector on the Vivitar camcorders is much shorter than the elongated rectangular base of the USB connector shown in Figure 3 of the `600 design patent.

12

48(b) **(FRONT VIEW and BACK VIEW)** Figures 1 and 2 of the `600 patent claim the overall shape of the claimed camera design, wherein the overall shape is substantially rectangular in shape with slightly curved corners. However, although the overall shape of the Vivitar camcorders is substantially rectangular in shape, it features pronounced rounded corners that are different in appearance than the slightly curved corners claimed in Figures 1 and 2 of the `600 design patent.

49. On information and belief, Cisco's `600 design patent is invalid under 35 U.S.C. §102 for anticipation and/or 35 U.S.C. §103 for obviousness in view of certain prior art references, including, but not limited to: the POINT AND SHOOT device (Exhibit C), the CVS disposable camera (Exhibit D), and/or U.S. Design Patent No. D527,403 (Exhibit E).

50. Sakar has suffered and will continue to suffer damages as a result of Cisco's wrongful allegations of design patent infringement.

51. Sakar requests that the Court declare that Cisco's `600 design patent is invalid and/or not infringed by Sakar's Vivitar camcorder products.

52. Sakar is entitled to an injunction under 15 U.S.C. § 1116, *et seq.* enjoining Cisco's wrongful conduct and false assertions of patent infringement, and to pay monetary damages.

## COUNT III
**(Declaratory Judgment – Non-infringement of Cisco's FLIP Trademarks)**

53. Sakar repeats the allegations in paragraphs 1-52 of this Complaint as if fully set forth herein.

54. Sakar by this Count III seeks a declaration that Sakar's past advertisements, sales, purchasing, and marketing of its Vivitar Camcorders of which Cisco now complains do not infringe Cisco's alleged trademark rights and do not violate the Lanham Act, 15 U.S.C. §§ 1051, 1114, 1125, et seq., including but not limited to §§ 32 and 43 of the Lanham Act.

55. Cisco alleges that it is the owner of the federally registered trademarks: FLIP VIDEO (Reg. No. 3,789,499) for camcorders; FLIP FOR GOOD (Reg. No. 3,800,900) for camcorders; FLIP ULTRA (Reg. No. 3,746,270) for camcorders; and FLIP MINO (Reg. No. 3,715,260) for camcorders. Cisco further alleges that it is the owner of the following federally unregistered trademarks: FLIP (Serial No. 77/910,849) for camcorders; and DO YOU FLIP (Serial No. 77/840,665) for camcorders. Cisco's alleged registered and unregistered trademarks are collectively hereinafter referred to as the "FLIP trademarks."

56. Cisco has repeatedly threatened Sakar with trademark infringement of the FLIP trademarks (see letters in Exhibits A and B). Accordingly, there exists a substantial and continuing justiciable controversy between the parties as to the infringement of Cisco's alleged FLIP trademarks.

57. Sakar has not infringed the FLIP trademarks, because Sakar does not use any FLIP trademarks or any similar variations thereof on its products, packaging, or advertising.

58. In addition, the unilateral use of the word "Flip" in the advertisements of some of Sakar's purchasers is not used as a trademark; but, instead is more reasonably characterized as a descriptive and/ or generic use of the word by these purchasers to describe how the screen or USB plug of the camera "flips out" of the camera housing. Thus, there is no confusion as to Sakar's purchasers because they are not using the word "Flip" as a trademark.

59. On information and belief, other third party companies, including but not limited to RCA, Samsung, and Cobra Digital, have been marketing, promoting and selling similar video cameras using the word "Flip" and similar variations thereof. (See Exhibit J).

60. On information and belief, by virtue of this uncontrolled third-party use of the word "Flip," Cisco's alleged broad trademark rights to all variations of the mark FLIP for use with camcorders or video cameras have been narrowed. Also, if Cisco had any valid trademark rights to the mark FLIP, it is limited in scope to the trademark registrations it obtained wherein the mark FLIP is used only in combination with a second word(s).

61. Because Sakar does not use any FLIP trademarks or any similar variations thereof on its products, packaging, or advertising, and because Cisco's trademark rights to its alleged FLIP trademarks are limited in scope, Sakar requests that the Court declare that Cisco's FLIP trademark has not been infringed by Sakar's Vivitar camcorder products.

62. Sakar has suffered and will continue to suffer damages as a result of Cisco's wrongful allegations of trademark infringement.

63. Sakar is entitled to an injunction under 15 U.S.C. § 1116, *et seq.* enjoining Cisco's wrongful conduct and false assertions of trademark infringement, and to pay monetary damages.

## COUNT IV
### (Declaratory Judgment – Non-infringement of Cisco's Trade Dress)

64. Sakar repeats the allegations in paragraphs 1-63 of this Complaint as if fully set forth herein.

65. Cisco alleges that it has trade dress rights to a federally unregistered "band design" on the front of its digital camera (hereinafter "Cisco's alleged band design") and that it has promoted and offered for sale cameras bearing this alleged band design at least as early as 2007.

66. Cisco has repeatedly threatened Sakar with trade dress infringement of Cisco's alleged band design (see letter in Exhibits A and B). Accordingly, there exists a substantial and continuing justiciable controversy between the parties as to the infringement and validity of Cisco's trade dress rights to is alleged band design.

67. Sakar has not infringed and cannot infringe any alleged trade dress rights to Cisco's alleged band design because the primary significance of this alleged band design is not an indicator of the source of goods and has not acquired secondary meaning.

68. Cisco's alleged band design has not acquired secondary meaning and cannot serve as a source indicator because none of Cisco's advertising or promotional materials specifically points consumers to its alleged band design as a source indicator prior to Sakar's introduction of its Vivitar camcorders into the marketplace.

69. In addition, on information and belief, other third party companies, including but not limited to Polaroid and Kodak, have been marketing, promoting and selling cameras with a similar band design to that of Cisco's alleged band design. (Exhibit K).

70. On information and belief, by virtue of this uncontrolled third-party use of similar band designs, Cisco's band design cannot function as a trademark and is not a valid trademark.

71. In addition, Sakar has not infringed any alleged trade dress rights to Cisco's alleged band design because there is no likelihood of confusion.

72. The design features of Cisco's alleged band design and the band design featured on Sakar's camcorder products differ and are not similar for at least the following reasons:

> 72(a) Sakar Vivitar's camcorder has a wide, silver band, whereas the Cisco alleged band design consists of a narrow strip;
>
> 73(b) the band on the right of the Cisco's camera lens is longer than the band on the right of the camera lens featured on Sakar's Vivitar camcorder; and
>
> 74(c) Sakar's Vivitar camcorder has a distinctive set of concentric perforations or holes on its band to the right of the lens, whereas Cisco's alleged band

design features perforations or holes in a rectangular pattern on its band to the right of the lens.

73. Sakar's camcorder products prominently display the famous and federally registered VIVITAR trademark on the center of its camcorder products, as well as on their packaging so that customers cannot be confused as to the source of the Vivitar camcorder.

74. Customers in the marketplace deciding to purchase a camcorder(s) offered by Cisco or Sakar are sophisticated, and would likely use the requisite degree of care before making such a purchase decision and thereby will notice the various differences between both parties' respective products, as emanating from two different sources, including, but not limited to: the relatively large price disparity between both parties' respective products, as well as the various differences in design, and operational features of both parties' respective products.

75. Because Sakar does not use Cisco's alleged band design or a like variation thereof on its product, packaging, or advertising and because Cisco's trade dress rights to its alleged band design are not valid, Sakar requests that the Court declare that Cisco's alleged trade dress band design has not been infringed by Sakar's Vivitar camcorder products.

76. Sakar has suffered and will continue to suffer damages as a result of Cisco's wrongful allegations of trade dress infringement.

77. Sakar is entitled to an injunction under 15 U.S.C. § 1116, *et seq.* enjoining Cisco's wrongful conduct and false assertions of trade dress infringement, and to pay monetary damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Sakar prays that this Court enter a judgment:

A.  declaring that Sakar's accused camera products do not infringe Cisco's `321 design patent and Cisco's `600 design patent;

B.  declaring that Cisco's `321 design patent and Cisco's `600 design patent are invalid and unenforceable;

C.  preliminarily and permanently enjoining Cisco, their agents and employees, any other person acting in concert with them, and any other person with knowledge of Cisco's claims, from asserting or threatening to assert any alleged design patent rights or infringement thereof, arising under Cisco's `321 design patent and Cisco's `600 design patent against Sakar, or any of its customers, or potential customers;

D.  preliminarily and permanently enjoining Cisco, their agents and employees, any other person acting in concert with them, and any other person with knowledge of Cisco's claims, from further engaging in assertions of trademark infringement against Sakar and Sakar's products with regard to alleged infringement of Cisco's FLIP trademarks;

E.  preliminarily and permanently enjoining Cisco, their agents and employees, any other person acting in concert with them, and any other person with knowledge of Cisco's claims, from further engaging in assertions of trade dress infringement against Sakar and Sakar's products with regard to alleged infringement of Cisco's trade dress band design;

F.  awarding Sakar monetary damages; and awarding Sakar punitive damages;

    G.    declaring this an exceptional case pursuant to 35 U.S.C. § 285 and 15 U.S.C. § 1117(a);

    H.    awarding Sakar its costs and reasonable attorneys' fees incurred in this action; and

    I.    awarding any other and further relief that this Court deems just and proper.

## JURY DEMAND

Plaintiff Sakar hereby demands a trial by jury on all issues properly tried to a jury.

Dated: September 28, 2010        Respectfully submitted,

By: _____
Ezra Sutton, Esq. (ES-2189)
Ezra Sutton & Associates, P.A.
900 Route 9 North
Woodbridge, New Jersey 07095
Tel: (732) 634-3520

*Attorneys for Plaintiff Sakar International, Inc.*